CAROLYN McKEOWN,

Plaintiff,

V

STATE OF TENNESSEE, DHS

Defendant.

CIVIL ACTION     PRO SE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

DAVIDSON COUNTY

CIVIL ACTION NO,:

DISTRICT JUDGE:

MAGISTRATE JUDGE:

**FILED**

DEC 02 2020  DB

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

03-20   1042

## COMPLAINT AND JURY DEMAND

Plaintiff, Carolyn McKeown, by way of complaint against Defendant the State of Tennessee,

Dept of Human Services, states and alleges as follows:

## PARTIES

1. Ms. Carolyn McKeown was employed by the State of Tennessee, as a Disability

Claims Examiner within the Department of Disability Services, an agency under DHS.

2. Defendant, State of Tennessee, Department of Disability Services, is an agency under

DHS, that processes disability claims for the Federal Agency: Social Security Administration.

3. Disability Services, under DHS, is headquartered in Nashville, TN.

## BACKGROUND FACTS

4. Plaintiff, Carolyn McKeown is over age 40.

5. Ms. McKeown was hired on November 25, 2019 as a Disability Claims Examiner for

the Dept of Disability Services.

6. Ms. McKeown's position began on February 3, 2020. Her job duties required her to

complete a three-month training program, to prepare her to evaluate medical claims for social

security applicants within the State of TN.

1

7. She held an hourly, non-exempt position that required her to access confidential materials while speaking with claimants over the phone.

8. Ms. McKeown performed exceptionally well within her training program at all times. She was not subject to discipline or reprimand until the unlawful retaliation alleged below.

9. Ms. McKeown did not learn of her compensation and benefits cost until after she began her position. The agency neglected to send her an offer letter confirming her pay prior to starting the job. Ms. McKeown made several phone calls to the DHS Dept of Human Resources (including emails) to get written confirmation of her pay and benefits. The agency did not respond to her request.

10. On February 4, 2020, Ms. McKeown met with Ms. Hope Shaw to discuss her salary and benefits cost. Ms. Hope Shaw advised Ms. McKeown that they did not have a copy of Ms. McKeown's resume and they had no record of her prior Insurance experience on file.

11. Ms. McKeown explained to Ms. Shaw that when she completed her first-round electronic written interview on October 29, 2019, she had her resume attached. Ms. McKeown also stated that, Ms. Kimberly Brasfield and Mr. Jarrame Bowers had Ms. McKeown's resume during her interview, on November 5, 2019.

## EXHIBIT W

12. On February 4, 2020 Ms. Hope Shaw advised Ms. McKeown that the agency would not negotiate her pay, and that the benefits costs were not included in her compensation. Ms. McKeown also learned that, as hourly employees, she and her co-workers would be paid for 37.5 hours a week, "scheduled hours." In fact, the department's online timesheet system was pre-set by management so that employees were only allowed to "clock in" or record their regular shift hours.

2

13. Ms. McKeown identified her disability to Ms. Hope Shaw, and explained that she would not be able to afford to buy and use the health, dental, and vision benefits. Ms. Hope Shaw advised Ms. McKeown to inform her trainer and supervisor of her disability. Ms. McKeown promptly notified her trainer, Ms. Kimberly Brasfield and her Supervisor, Mr. Anthony Stinson via discussion and email. Ms. Brasfield and Mr. Stinson took no action in regards to this information.

14. At that time, Ms. McKeown was also advised that the State of TN Dept of Disability Services does not have a qualified HR dept. They encourage employees to pay money to join TSEA a 501c3 to get their HR questions answered.    https://tseaonline.org/   Ms. McKeown was not a member of this nonprofit organization. Ms. McKeown did speak with a member relations representative who informed her that her earnings should have been offered at a much higher pay rate and higher level (2 or 3) due to her prior business and advanced training and education.

15. Very soon, after starting work at the agency, Ms. McKeown demonstrated professional competency in her work and in her interactions with her supervisors and coworkers. Her weekly assessment scores of 97.5% were way above the required 80% average.

16. All of a sudden, without advance notice, on February 21, 2020, Ms. McKeown was approached by Ms. Stephanie Flick (Disability QA Reviewer) who asked Ms. McKeown to follow her to a conference room. Ms. Flick advised Ms. McKeown that Ms. Kimberly Brasfield had requested this meeting with Mr. Jarrame Bowers and Ms. Kimberly Joseph (Director). During this meeting, Ms. McKeown was reprimanded by Mr. Jarrame Bowers and accused of "causing a disruption during the classroom training, and for using the bathroom without permission during unscheduled breaks." There was no evidence to support his claim. In addition, Ms. McKeown was advised that she had to complete an additional background

3

screening, SF85-P suitability clearance, that was presented to her training class after starting the job. Mr. Bowers said he was not familiar with the process, but that it was a requirement for the job.

17. Ms. McKeown disclosed her disability during that meeting to Mr. Jarrame Bowers and Ms. Kimberly Joseph, and they took no action in regards to this information.

18. On February 21, 2020, Ms. McKeown received her first emailed write up from Mr. Jarrame Bowers. Mr. Bowers alleges Ms. McKeown "caused classroom distractions," because she inquired about her salary during her benefits enrollment meeting with (HR Generalist) Malcolm Richards. Mr. Bowers advised Ms. McKeown to discuss her HR related matters during her unpaid lunch breaks instead.

## EXHIBIT A

19. On February 24, 2020, Ms. McKeown wrote a formal charge of harassment email to Workplace.Harassment@tn.gov, Jarrame Bowers, Kimberly Joseph, Kimberly Brasfield, and Abby Sparks. On that same day, Ms. McKeown met with Ms. Darlene Stringfellow and Ms. Abby Sparks at 505 Deaderick Street, James K. Polk Bldg., Nashville, TN 37243 to discuss the harassment complaint.

20. Ms. McKeown disclosed her disability to both Ms. Stringfellow and Ms. Sparks. Ms. McKeown asked Ms. Sparks and Ms. Stringfellow about the pay, benefits, SF85-P background check form. Ms. Abby Sparks and Ms. Darlene Stringfellow would not answer Ms. McKeown's questions about the SF85-P. They said they would arrange to have her complete it on February 28, 2020.

4

21. Ms. Sparks apologized to Ms. McKeown about the "sloppy onboarding process," and admitted that it was not handled professionally. The compensation package should have been discussed and her questions should have been answered prior to starting the job.

22. Ms. Sparks proceeded to give Ms. McKeown a paper copy of the benefits package and costs. Ms. Stringfellow advised Ms. McKeown that she could enroll in the health plan on April 1, 2020. Ms. McKeown advised that her salary is below market rate and inquired about the pay range for someone with her education and professional background. Ms. Stringfellow and Ms. Sparks would not discuss the pay.

23. Ms. McKeown advised that she could not afford the benefits. Ms. Stringfellow disregarded Ms. McKeown's concerns about the pay and the cost of the benefits, and told Ms. McKeown that someone from H.R. would send her a Medical Accommodation form to be completed by a Medical Doctor, despite the fact that Ms. McKeown said that she was uninsured.

24. Ms. McKeown showed them an email she sent to Ms. Amy Neufeld (H.R. Generalist) on January 13, 2020 to follow up with her about additional questions regarding the pay and benefits prior to starting the job. Her email was ignored.

**EXHIBIT B    EXHIBIT G**

25. Ms. McKeown emailed Ms. Amy Neufeld, Ms. Darlene Stringfellow, and Ms. Abby Sparks about the H.R. matters related to the medical accommodation request. She mentions the January 13, 2020 email that was sent to Ms. Amy Neufeld that was ignored.

26. Ms. McKeown disclosed her age in the email, and indicated that "no specialty doctor in Nashville will see an uninsured patient." She also stated, "I have a disability that I disclosed to Kimberly Brasfield, to Jarrame Bowers, Kimberly Joseph, Darlene Stringfellow, and Abby Sparks." She stated, "The cost of the healthcare is out of reach with this pay."

5

27. Ms. McKeown also noted that she would not receive her first paycheck direct deposited like the rest of her new hire training class because her online Edison profile had not been established. McKeown confirmed this with Ms. Bronnie Allen (H.R. Generalist).

28. Ms. McKeown stated, "I am unable to present a note from a specialty doctor who cannot treat an uninsured patient. I applied for other professional positions that pay higher wages. As my email to Ms. Amy Neufeld indicates, I attempted to discuss the pay before starting the job."

### EXHIBIT B

29. On February 24, 2020, Ms. Bronnie Allen in Human Resources called Ms. McKeown to confirm her mailing address. Ms. Allen proceeded to update it online and said she would have her first paycheck mailed to her

30. On February 26, 2020, Ms. McKeown emailed Mr. James Stanfield to inquire about the SF85-P suitability form. He responded, "SSA is not transparent about the process," and did not take any leadership initiative to assist Ms. McKeown with her questions.

### EXHIBIT J

31. On February 28, 2020, Ms. McKeown was not paid for her two weeks of employment. The rest of her entire training class received their direct deposits. Ms. McKeown spent a considerable number of unpaid hours, calling the HR service center, and was given the run around about her missing paycheck. She was not given the proper assistance to activate her direct deposit which is a requirement with the State of Tennessee employees.

32. Ms. McKeown called Ms. Darlene Stringfellow, and Ms. Bronnie Allen, and nothing was resolved. Ms. McKeown completed her SF85-P background check form on the automated e-Qip proprietary system.

33. On March 2, 2020, Ms. McKeown called the payroll department during lunch to inquire about her paycheck. She was advised that her paycheck was mailed to the wrong address. At this point, Ms. McKeown began experiencing excessive micromanagement from her trainer, Ms. Kimberly Brasfield, and her Supervisor, Mr. Anthony Stinson.

34. On March 3, 2020 to March 6, 2020, the office was closed due to the Tornado Storm.

35. On March 4, 2020, Ms. McKeown received a call from Ms. Alysse Gregory (Staff Attorney, who did not identify her self as an attorney until Ms. McKeown looked up her name in the State of TN directory). Ms. Gregory said she was calling from the State of TN EEO department to investigate her February 24, 2020 Formal Charge of Harassment complaint.

36. Ms. McKeown stated that all the necessary information was already sent to Ms. Abby Sparks (also an attorney) and Ms. Darlene Stringfellow in her email.

37. March 8, 2020, Ms. McKeown sent an email to follow up on her March 4, 2020 conversation with Ms. Alysse Gregory. The email was sent to Ms. Gregory, Ms. Abby Sparks, Commissioner, Mr. Juan Williams, DoHR, and Commissioner Danielle Barnes, DHS.

38. Ms. McKeown asked to amend her February 24th Formal Charge of Harassment. She specifically requested to meet with the EEO committee so that should could discuss her charge in person. She specifically states that, "she did not arrive here, to fail." She disclosed that she had intended to file an **EEOC** charge. Unlike her new hire classmates, Ms. McKeown still had not been paid. Ms. McKeown fully disclosed her disability in the email.

### EXHIBIT K

39. March 9, 2020, Ms. McKeown still had not received her paycheck. During lunch, Ms. McKeown called Human Resources. To no avail, they were unable to assist her.

7

She called her Congressman, State Reps and the TN Governor's office to reach out on her behalf since she was the only new employee who was not paid.

40. March 9, 2020, Ms. McKeown walked next door to the **EEOC** office, and spoke with Investigator, Mr. Curtis Smith who took her complaint. Ms. McKeown disclosed her disability and explained that the Department of Disability Services was treating her disparately after she disclosed her disability. She confirmed that she is highly qualified for her position, having worked in various corporate roles and that she was eager to become a public servant and share her hard-earned skills with the agency.

41 . March 1 0, 2020, 6:1 2 pm Ms. McKeown received an email from Ms. Abby Sparks on Ms. McKeown's personal email advising, "It is clear that Ms. Brasfield is attempting to work with you to help you catch up on your training. The DHS is aware of your concerns and we have taken appropriate action to address each one."

**EXHIBIT  P**

42. March 11 , 2020, 1 0:35am Ms. McKeown sent an email during her ten-minute break to Ms. Abby Sparks, Ms. Kimberly Brasfield, Ms. Anthony Stinson, Ms. Darlene Stringfellow, Ms. Alysse Gregory, Ms. Bronnie Allen. She states, "I received a handwritten note at 1 0:1 2am from Kimberly Brasfield to check my email today during my break time. I am writing this email now on my break. Due to my disability, I generally need to use the ladies' room and hydrate on our short breaks. I do not sign into email during training, until we are advised to, because our training is regimented with lectures."

43. Ms. McKeown also mentions in the email that she had not received a paycheck from February 28, 2020 to today, March 11 , 2020. She states, "I am the only new hire employee in a

8

training class comprised of 19 new hires who was not paid. I was instructed by Ms. Stringfellow that I had to call around to the various State agencies and research the reason for not being paid. I have followed everyone's instructions. After several calls during my lunch break, I was still unable to resolve the issue. I had to escalate my matter to Ms. Abby Sparks."

### EXHIBIT N    EXHIBIT O

44. Almost immediately thereafter, the Department of Disability Services supervisors began to wage a campaign of retaliation against Ms. McKeown for her internal and external complaints. On March 11, 2020, 10:58am Ms. Brasfield sent an email to Ms. McKeown, "You should not be checking your emails during class time, only check your emails when returning from breaks or lunch and throughout the day."

45. Ms. McKeown was unable to respond to her emails once she returned to the training classroom from breaks and lunch because training had started promptly, and that did not allow Ms. McKeown time "during the day," to properly respond to any correspondence. This was done by design, to overload Ms. McKeown with emails so that it would cause a distraction to her and her classmates. Her classmates were not bombarded with emails.

46. Ms. McKeown's similarly situated coworkers on occasion returned back from breaks and lunch late to training. They were not reprimanded.

47. Ms. McKeown's time during training was micromanaged and highly controlled. Ms. McKeown's seat was in the back of the classroom. On occasion, Ms. Kimberly Brasfield sat directly behind Ms. McKeown while typing emails to her, and keeping tabs on her, while Ms. McKeown was focused and paying attention to the guest lecturers.

### EXHIBIT  L

9

48. March 11, 2020, 12:00pm, Ms. McKeown approached Mr. Jarrame Bowers on her lunch break to inform him that Ms. Brasfield gave her a hand written note at 10:12am to check her email. At 10:35am Ms. McKeown followed Ms. Brasfield's instructions and confirmed that she did check her emails. Her break time was ten minutes. Ms. McKeown's efforts to read and respond to all of her emails within a short period of time, was later follow up by a reprimand by Ms. Bradfield at 10:58am in her email to Ms. McKeown.

### EXHIBIT N    EXHIBIT O    EXHIBIT L

49. Clearly, Ms. Brasfield was on a mission to try and get Ms. McKeown to quit her job. Ms. McKeown is aware that the department has a history of terminating employees who report malfeasance and who disclose a disability. On March 11, 2020, 12:26pm Ms. McKeown sent an email during her lunch break in response to Ms. Brasfield's 10:58am email. She replied to Ms. Brasfield, and copied Ms. Sparks, Ms. Gregory, the compliance officer. and **EEOC**.

50. Ms. McKeown states, "I am asking for the harassment and disparate treatment to stop. I was instructed by Kimberly Brasfield to respond to my emails today. She gave me that request on paper in writing. I followed her instructions. I am being treated disparately and in retaliation for exercising a protected, concerted activity."

51. Ms. McKeown continues, "I am being reprimanded for following her instructions. I am being micromanaged, with excessive scrutinization after disclosing my health impairments and need for health, dental, vision and prescription care. I am the only person (over age 40) in the class, who was written up on February 21, 2020 pretextually, during my probation period, in an attempt to get me to quit or to begin progressive proceedings to terminate my employment with the State."

### EXHIBIT Q

52. On March 11, 2020, during the later afternoon, Ms. McKeown left the training room to use the bathroom. Upon her return, Ms. Kimberly Brasfield, passed by Ms. McKeown in the hallway. Ms. Brasfield turned back towards Ms. McKeown and said in a loud voice, "You need to bring a Doctor's note if you use the bathroom on non-break times!"

53. Ms. McKeown was caught by surprise at this impromptu exchange and said, "That is a HIPAA violation and this discussion needs to be handled in private, and not out in the open area where other employees are working."

54. Ms. McKeown notified Mr. Jarrame Bower's about the exchange and asked for a mediation meeting with Human Resources and Ms. Kimberly Brasfield.

55. Instead of involving Human Resources, Mr. Bowers brought Ms. McKeown to Ms. Hope Shaw's (Supervisor) office. Both Mr. Bowers and Ms. Shaw are not Human Resources professionals. No one from Human Resources was present at the meeting. Ms. Shaw and Mr. Bowers proceeded to tell Ms. McKeown that she had to bring in a Doctor's note in order to use the bathroom on non-break times.

56. Ms. McKeown inquired as to the reason for this request since she stated that other similarly situated employees were leaving the classroom to use the bathroom on non-break times. Ms. McKeown disclosed her disability to Ms. Shaw and Mr. Bowers a second time. Ms. McKeown's bathroom use was not excessive and did not interfere with her performance. Both Ms. Shaw and Mr. Bowers appeared unfamiliar with the prevailing federal laws regarding the ADAAA and ADEA and Title VII of the Civil Rights Act of 1964. The Department of Disability Services was giving preferential treatment to younger employees who were under forty, while denying Ms. McKeown the same or similar benefits.

57. Ms. McKeown stated that she has experience in Human Resources from having worked in the industry and obtaining a professional certification. She stated that this Covid-19 outbreak has prevented anyone at the moment to schedule appointments to see specialists in Nashville, unless it is Covid related.

58. Ms. McKeown stated that she was being "treated disparately" compared to her similarly situated coworkers who were able to use the bathroom on non-break times without reprimand, and that she wanted to arrange for a mediation meeting with Human Resources and Ms. Kimberly Brasfield. Ms. McKeown's request was denied.

59. On March 12, 2020, Ms. McKeown received an email letter from Ms. Alysse Gregory (under age 40), "I have received your email. Our report was sent to DHS for review and handling on March 10, 2020, and we consider this matter closed within our office. You may want to contact the Tennessee Bar Association who could refer you to an attorney that practices in the field you are requesting."

### EXHIBIT R

60. On March 12, 2020, 10:10am, Ms. McKeown received an email from Ms. Jacqlyn Hannibal, (under age 40 contractor at Omniplex World Services) advising that they received an "incomplete suitability" SF85-P packet. Ms. McKeown completed it on February 28th.

61. March 12, 2020 11:27am, Ms. McKeown forwarded that email to Ms. Abby Sparks, and Jacqlyn Hannibal, advising that she had not been given time to review her emails, and that she filed an **EEOC** complaint since she had not been paid for her time, and that she was experiencing overt harassment from Ms. Kimberly Brasfield due to disclosure of her disability.

62. Ms. McKeown also stated in her email, "Each time I try to check my emails, I am reprimanded from the supervisors and trainers and was told to review my emails on breaks or

12

unpaid lunch time. I have disclosed my age-related disability that require me to use the ladies' room. Please let me know when you would like me to review and respond to this email."

63. On March 13, 2020, at 3:31pm, Ms. McKeown received a second email from Ms. Jacqlyn Hannibal advising her to review the email she sent on March 12ᵗʰ and to update the SF85-P suitability form within three business days.

## EXHIBIT  M

64. March 13, 2020 Ms. McKeown emailed Ms. Abby Sparks with questions about the SF85-P suitability form. Ms. Sparks responded "Our office in General Counsel is not able to provide your assistance with this matter."  **EXHIBIT  J**

65. March 13,2020, the second pay period. Ms. McKeown was still not enrolled in Direct Deposit. She received 2 paper checks and was told by Human Resources and Darlene Stringfellow that her Direct Deposit would not begin until March 27, 2020.

66. March 13, 2020, Ms. McKeown called Ms. Jacqlyn Hannibal at Omniplex to confirm that she provided the required information on the SF-85P form. Ms. McKeown had a few questions that Ms. Hannibal was unable to answer, and proceeded to have Mr. Patrick Reidy (under age 40) take over the call. Ms. McKeown asked if her income from the job would satisfy the credit check criteria and the fiduciary responsibilities in her role which is a requirement to be deemed "suitable" for the SF85-P suitability form. Mr. Reidy did not know the answer to that question and advised Ms. McKeown that if a Federal Investigator had questions that needed clarification, he/she would reach out to Ms. McKeown.

67. No further action was necessary since Ms. McKeown completed the form.

13

68. Ms. McKeown states that the SF85-P suitability check was not mentioned on her job description, during her interview, or at the time of the job offer. It was not addressed in her offer letter from Human Resources.

69. Ms. McKeown understood that she passed the background screening criteria when she was called and offered the position on November 25, 2019.

70. Ms. McKeown, called the DOD Defense Counter Intelligence and Security Agency. She was advised that all Federal jobs that require a clearance would list that requirement on the job description, and that she should have been told by her employer via the job application, or during her interview, or at the time of the offer that the SF85-P suitability clearance was a requirement.

71. Ms. McKeown has no background issues to be concerned about. She was truthful and provided all the information that she had to comply with the requirements. Ms. McKeown was told she passed the (SAC) special agreement fingerprint check on November 19, 2019.

72. March 13, 2020. Ms. McKeown received a second email from Mr. Jarrame Bowers. He copied her supervisor, Mr. Anthony Stinson, Ms. Jill Richardson, Ms. Hope Shaw. This second write up summarized the March 11, 2020, meeting between Ms. McKeown, Ms. Shaw and Mr. Bowers. He confirmed that Ms. Brasfield admitted to speaking with Ms. McKeown about a doctor's note (out in the open area). He then continued his wage of retaliation against Ms. McKeown, by stating, that "walking out of the classroom at unscheduled times disrupts the classroom." Once again, the Department of Disability Services was giving preferential treatment to younger employees who were under forty, while denying Ms. McKeown the same or similar benefits.

14

73. Ms. McKeown has repeatedly experienced excessive scrutinization as a result of disclosing her disability. Her similarly situated coworkers were treated more favorably and were not written up for using the bathroom during training.

74. It is very clear, that Ms. McKeown was being targeted for pushout. This time frame was during the Covid-19 outbreak, where doctors were not seeing patients unless for emergencies or Covid issues.

75. Mr. Bowers stated additional untruthful comments in his email, that were slanderous to Ms. McKeown's professional reputation, and which would purposely discredit her, so that she would not pass the SF85-P suitability clearance.

### EXHIBIT C

76. March 16, 2020, Ms. McKeown was working at her desk and was approached by Ms. Jill Richardson (Director). Ms. McKeown was coughing and Ms. Richardson asked her if she was sick. Ms. McKeown said, she was not sick, but disclosed her disability to Ms. Richardson.

77. Ms. McKeown was concerned about the Covid outbreak and asked Ms. Richardson what the safety protocols were for social distancing. Ms. Richardson stated, "that's why we have you working at your desks." Employees still used the elevators, did not wear masks, and had close contact conversations in the break room. There was no actual social distancing enforced.

78. Ms. McKeown informed Ms. Richardson that her Supervisor, Anthony Stinson, was also coughing, and called out sick during this deadly Covid pandemic. Ms. McKeown also said that one of the bathrooms had a strong odor and that there were no cleaning staff around to stock supplies and perform deep cleaning. Ms. Richardson said she was aware of it.

79. Subsequently, another employee called out sick on Ms. McKeown's team. Ms. McKeown was extremely worried about the lack of communication regarding the safety

protocols. There was an email that circulated explaining that the Medical Doctors in the office were no longer working at the office. They decided to work remotely. Ms. McKeown later learned, that one of the doctors had Covid.

80. Mr. James Stanfield wanted to keep the office open during the deadly Covid-19 outbreak, since working from home was not an option while in training.

81. March 17, 2020, Ms. McKeown emailed Ms. Darlene Stringfellow and Mr. James Stanfield inquiring about the office protocols for social distancing, "The CDC is recommending that people stay away from crowds exceeding 10 people. My Supervisor, Mr. Stinson was coughing with some sort of bronchial issue yesterday, and we worked in close proximity together within his office. Some team members called out sick. There was no real social distancing practiced on our team."

**EXHIBIT D**

82. March 18, 2020 Ms. Jill Richardson stopped by Ms. McKeown's desk. She informed Ms. Richardson that she completed the Request for Accommodation Due to Higher Risk for Serious Illness from Covid-19 form that was sent out by Mr. James. Stanfield.

83. March 19, 2020 12:21pm Ms. McKeown emailed the compliance officer, Ms. Abby Sparks, and Ms. Darlene Stringfellow. She advised that "the 6th floor bathroom, does not have soap in the dispenser and that I left the bathroom unable to wash my hands. I then walked to a nearby breakroom and there was no soap (automatic dispenser to avoid touching) nor paper towels."

84. Ms. McKeown also advised in her email, "Yesterday a coworker told me that the 3rd floor bathroom was out of soap." Ms. McKeown stated, "I don't see cleaning people updating the bathrooms. The 4th floor bathroom has no ventilation fan and has a strong odor that Ms. Jill

16

Richardson is aware of. Other women notice it too. With this pandemic, this is very concerning, I have (disability noted) and I am doing my best to comply with the CDC recommendations."

**EXHIBIT E**

85. Since Ms. McKeown did not hear back from Mr. Jarrame Bowers about her mediation request, on March 19, 2020, Ms. McKeown emailed Ms. Krisann Hodges (General Counsel) requesting a mediation meeting with Ms. Kimberly Brasfield from the March 11, 2020 encounter and the March 13, 2020 writeup from Mr. Bowers. Ms. McKeown did not receive a response.

**EXHIBIT D**

86. March 20, 2020, Ms. McKeown emailed Mr. James Stanfield and Ms. Jill Richardson her Request for Accommodation Due to Higher Risk for Serious Illness from Covid-19 form.

**EXHIBIT I**

87. March 20, 2020, Ms. McKeown received a call from Mr. Christopher Jackson at Omniplex World Services who informed Ms. McKeown that all of her info was complete on the SF-85P form and if additional information was needed, a Federal Investigator would contact her.

**EXHIBIT S**

88. March 22, 2020, Ms. McKeown was worried about the Covid outbreak that was all over the news. There was no social distancing enforced. Ms. McKeown emailed Ms. Krisann Hodges (General Counsel), "Can we talk on the phone? Can you listen to this March 21, 2020 link to a news Channel 5 article, 1,500 plus TN physicians urge Governor to order a shelter in place." Ms. McKeown asked, "Do you personally talk to the Governor? I am over age 40 with (disability disclosed). If all it took was washing hands, and using sanitizers then why is the virus spreading?" Ms. Hodges did not respond.

17

**EXHIBIT F    EXHIBIT T**

89, 2020 Ms. McKeown was approached by Ms. Jill Richardson who asked her to walk with her to Mr. James Stanfield's office. She was immediately terminated with no reason stated. Human Resources was not present.

90. Ms. McKeown was handed a termination letter dated March 23' 2020. The allegation was pretextual and alleges that Ms. McKeown did not complete the questions on the SF85-P suitability form.

91. The truth is, Ms. McKeown did complete the SF85-P suitability form to the best of her ability. This was confirmed three days earlier by Mr. Christopher Jackson at Omniplex, who advised Ms. McKeown that it was complete, and that it would be assigned to an Investigator.

92. Ms. McKeown's SF85-P suitability application was never assigned to a Federal Investigator. It is quite obvious, that right when Ms. McKeown disclosed her (disability on the Covid high risk form), she was immediately terminated, unlawfully.

**EXHIBIT I**

93. Defendant subjected Ms. McKeown to an adverse employment action in retaliation for a protected activity just after she completed her Covid-19 high risk susceptibility form, and after she complained of discrimination to the **EEOC**. The State of Tennessee, DHS, Department of Disability Services (Kimberly Brasfield, Jarrame Bowers, James Stanfield, Jill Richardson, Darlene Stringfellow, Abby Sparks, Anthony Stinson, and Hope Shaw) terminated Ms. McKeown as payback for her engaging in a protected activity by filing a legitimate complaint to the **EEOC**.                    **EXHIBIT H**

94. Despite Ms. McKeown's multi-industry talents and hard-earned advanced education, and her commitment to serve the public, DHS Department of Disability Services as a whole has

a very different reputation. Specifically, the department had medical professionals who were felons working there, and accessing the Federal Social Security Administration database.

95. The department was purposely denying legitimate and valid social security claims to the Tennesseans who were very sick, and some who had terminal illnesses. This was uncovered in a five-year investigation that cost the Tennessee tax payers a lot of money, that could have been used for claimants' benefits. The Tennessean article; <u>Denied: How some Tennessee doctors earn big money denying disability claims</u>. 1/6/2019.

### EXHIBIT U  EXHIBIT V

COUNT I – Retaliatory Termination in violation of the American with Disabilities Act as Amended (ADAAA) and Age Discrimination Employment Act (ADEA) T.C. § 4-21-407

As a result of Defendant's unlawful conduct, McKeown has been subjected to job detriment and economic losses.

COUNT II – Retaliatory Termination in violation of Title VII of the Civil Rights Act of 1964

As a result of Defendant's unlawful conduct, Ms. McKeown has been subjected to emotional distress, pain, suffering, mental anguish, embarrassment, anxiety, stress and humiliation.

COUNT III – Defendant subjected Ms. McKeown to an adverse employment action in retaliation for protected OSHA reporting conduct. Ms. McKeown reported safety concerns during Covid-19 outbreak to Ms. Darlene Stringfellow, Ms. Krisann Hodges and Mr. James Stanfield.

COUNT IV – Retaliatory Termination due to Ms. McKeown's filing an EEOC complaint. The agency was aware of Ms. McKeown's complaint and subjected her to a hostile workplace environment. T.C. § 50-3-409

### <u>RELIEF FOR DAMAGES</u>

Plaintiff, Carolyn McKeown seeks the following damages and relief:

a. Judgement in favor of the plaintiff against the defendant

b. Compensatory damages of $75,000

c. Punitive damages

d. Cost of suit, PLUS attorney fees (if applicable) in addition to compensatory damages

e. Reinstatement and additional relief as this Court deems just and equitable.

f. Rehired back into a professional position (Executive or otherwise) that matches her multi-industry experience, advanced education, and pays a living wage with health, dental and vision benefits.

NOV 24, 2020

_Carolyn McKeown_    11/24/2020
(signature)

CArolyn McKeown    11/24/2020
(printed name)

2000 MAllory Lane Ste 130 PMB 155
(address)    Franklin, TN
                              37067

_____
(email)

_____
(phone)

# CONFIDENTIAL FOR ASSIGNED JUDGE

Dear Judge _____

Please accept this hardship request for waiver of court fees.

I am unable to pay the fees due to lack of income.

My weekly $275.00 TN unemployment benefits ended this month, November 2020.

I am unable to get legal counsel to represent me in this matter. Therefore, I am representing myself, pro se. I am not an attorney.

Is it possible for the court to assign me an attorney for this civil matter like they do for criminal defense clients? I worry that my Due Process Rights will be harmed.

I arrived here in TN a year ago. I was eager to take my prior multi-industry business experiences and work for the first time, as a public servant with the State of TN.

I applied for various positions in the areas of Human Resources, Insurance and Legal Support. All of my applications were denied for the higher-level positions. I was offered one position at the Department of Disability Services, under DHS in Nashville.

Title: Disability Claims Examiner

H.R. would not discuss the pay or cost of the benefits prior to starting the job.

H.R. would not confirm my pay in writing in my offer letter.

At age 52, I have age related health conditions that are treatable, if I have an affordable (group) health plan. Using healthcare benefits requires a living wage.

I wish I could meet with you personally and tell you my story at how I arrived at filing this charge against the State of TN, Dept of Disability Services.

My story resonates with Tom Mueller's book; Crisis of Conscience.

I wish I could work for a law firm (plaintiff side) because I enjoy fighting for justice and doing the right thing.

Thank you for your time.

Carolyn McKeown 11/24/2020