UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| CAROLYN MCKEOWN, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No. 3:20-cv-01042 |
| | ) | Judge Trauger |
| STATE OF TENNESSEE DEPARTMENT OF HUMAN SERVICES, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Carolyn McKeown, a Tennessee resident, filed a pro se employment discrimination complaint against the Tennessee Department of Human Services. (Doc. No. 1.) She also filed an application to proceed as a pauper. (Doc. No. 2.) The case is before the court for a ruling on the application and initial review of the complaint.

**I.  Application to Proceed as a Pauper**

The court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). The plaintiff's application reflects that she cannot presently pay the full civil filing fee in advance without undue hardship. Accordingly, the application (Doc. No. 2) is **GRANTED**.

**II.  Initial Review of the Complaint**

The court must conduct an initial review of the complaint and dismiss any action filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov.

15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

**A.     Standard of Review**

In reviewing the complaint, the court applies the same standard as under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The court must then consider whether those factual allegations "plausibly suggest an entitlement to relief," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept as true "unwarranted factual inferences," *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)), and "legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, pro se plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of pro se litigants" or to "advis[e] litigants as to what legal theories they should pursue").

### B. Factual Background[1]

The complaint alleges that, on November 29, 2019, the Tennessee Department of Human Services ("DHS") hired the plaintiff as a disability claims examiner in the Department of Disability Services ("DDS").[2] (Doc. No. 1 at 1.) The plaintiff began a three-month training program on February 3, 2020. (*Id.*) Soon after, the plaintiff began to have disagreements with DHS personnel concerning salary, benefits, and scheduled hours. (*Id.* at 1-2.) The plaintiff communicated to supervisors that she was disabled and would not be able to purchase health insurance due to late-disclosed conditions of employment.[3] (*Id.*) DHS personnel, however, took no action. (*Id.*) In late February, despite the plaintiff's good job performance, supervisors began to reprimand the plaintiff and impose additional employment conditions, including the need to complete supplemental background suitability screening. (*Id.* at 3-4.) The plaintiff disclosed her disability to additional DHS personnel, but they took no action. (*Id.*)

On February 24, the plaintiff made a formal charge of harassment to her superiors. (*Id.* at 5.) The plaintiff received no resolution and had multiple frustrating or negative interactions with DHS personnel. (*Id.* at 5-7.) She also began to receive "excessive micromanagement" from her DDS trainer and supervisor. (*Id.*) On March 4, an investigator from the Tennessee equal employment opportunity department, Alysse Gregory, called the plaintiff to investigate the harassment charge. (*Id.* at 7.) On March 8, the plaintiff emailed her supervisors, again disclosed

---

[1] The complaint prepared by the plaintiff is over twenty single-spaced pages long and contains a detailed narrative of events that occurred over several months, including reference to various documents. (*See* Doc. No. 1.) A complaint in federal court need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). While the plaintiff is not penalized for including so much additional information, the court does not restate all of plaintiff's factual narrative here.

[2] DDS is an agency of DHS that processes disability claims for the Social Security Administration. (Doc. No. 1 at 1.)

[3] The complaint does not describe the plaintiff's disability.

3

her disability, and asked to amend the charge of harassment to request a meeting "with the EEO committee so she could discuss her charge in person."(*Id.*) Over the next few weeks, the plaintiff continued to complain – including to her congressman, state representatives, and the governor's office – about the handling of her employment and complaint. (*Id.* at 8.) On March 9, the plaintiff pressed her complaint with a new investigator at the "EEOC office." (*Id.*) The plaintiff disclosed her disability and explained that she was being treated "disparately after she disclosed her disability" to her supervisors. (*Id.*)

The complaint alleges that the plaintiff's supervisors subsequently "began to wage a campaign of retaliation" against the plaintiff, including multiple reprimands, that was designed to micromanage, control, distract and "overload" the plaintiff. (*Id.* at 8-10.) The plaintiff believes these actions were an attempt to get her "to quit her job." (*Id.* at 10.) On March 11, the plaintiff sent an email "asking for the harassment and disparate treatment to stop," and asserting that she was being treated "disparately and in retaliation for exercising a protected, concerted activity." (*Id.*) The plaintiff further asserted that she was being "excessive[ly] scrutinize[ed] after disclosing . . . health impairments." (*Id.*) On March 11, the plaintiff's supervisors publicly demanded that she bring in a doctor's note in order to use the bathroom during "non-break" times, but the supervisors did not impose this requirement on other employees. (*Id.* at 11.) The plaintiff disclosed her disability again, but the supervisors "appeared unfamiliar" with federal civil rights laws. (*Id.*) The plaintiff requested mediation, but the request was denied. (*Id.* at 11-12.)

On March 12, Alysse Gregory notified the plaintiff that the investigation of the plaintiff's complaint had been closed, and she referred the plaintiff to the Tennessee Bar Association. (*Id.* at 12.) On the same day, the plaintiff was notified that her additional background suitability screening submission was determined to be incomplete. (*Id.* at 12-13.) The plaintiff sought assistance

concerning the additional screening submission from multiple individuals, but little was provided. (*Id*. at 13.) The complaint alleges that the plaintiff's supervisors continued to "wage . . . retaliation" involving "excessive scrutinization" because she was "targeted for pushout." (*Id*. at 14-15.)

In mid-March, the plaintiff began to express concerns about the DDS office being open with insufficient social distancing during the COVID-19 pandemic, including making complaints about the cleanliness of the bathrooms. (*Id*. at 15-16.) The plaintiff noted that this was very concerning given her disability. (*Id*.) The plaintiff submitted a "Request for Accommodation Due to Higher Risk for Serious Illness from Covid-19," but no action was taken. (*Id*. at 16-17.) On March 22, the plaintiff emailed the general counsel, asked if the general counsel personally spoke with the governor, and requested to speak on the phone about her concerns regarding COVID-19. (*Id*. at 17.)

On March 23, the plaintiff was terminated by her supervisors on the ground that she did not complete the questions on her background suitability screening form. (*Id*. at 18.) The complaint alleges the plaintiff's termination was "payback" for "filing a legitimate complaint." (*Id*.)

**C.     Discussion**

The complaint reflects that the plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651, *et seq.* ("OSHA"); and the Tennessee Occupational Safety and Health Act, Tenn. Code Ann. §§ 50-3-106(8) and 50-3-409(a) ("TOSHA"). As a threshold matter, the court must address whether the plaintiff has satisfied the administrative exhaustion requirement for Title VII and ADA claims.

Before filing suit in federal court under Title VII or the ADA, a plaintiff must first timely file a relevant charge of discrimination before the Equal Employment Opportunity Commission or corresponding state agency (together, "EEOC"). *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001) (Title VII) (citing *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999)); *Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004) (ADA) (citing *Peete v. Am. Standard Graphic*, 885 F.2d 331, 331-32 (6th Cir. 1989)). The purpose of this requirement is to allow the EEOC an opportunity to resolve disputed matters by voluntary settlement. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731-32 (6th Cir. 2006) (citing *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984)).

To exhaust administrative remedies, a plaintiff must file a charge with the EEOC within one hundred and eighty days after the alleged unlawful employment practice occurred. 42 U.S.C. §§ 2000e-5(e)(1) (Title VII); 12117(a) (adopting Title VII's "powers, remedies, and procedures" for ADA claims). If the EEOC finds that the charge has a reasonable basis, it will issue a right-to-sue notice to the plaintiff. *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999) (citing 29 C.F.R. § 1601.28(b)). Upon receipt of a right-to-sue notice, the employee has ninety days in which to bring a federal action alleging violation of Title VII or the ADA. 42 U.S.C. §§ 2000e-5(f)(1); 12117(a). Accordingly, administrative exhaustion requires a plaintiff to (1) timely file a charge of employment discrimination with the EEOC and (2) receive and timely act upon a statutory right-to-sue notice. *See Granderson v. Univ. of Mich.*, 211 F. App'x 398, 400 (6th Cir. 2006) (citing *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989)).

The exhaustion of administrative remedies is a condition precedent to a Title VII or ADA action. *Zipes v. TWA*, 455 U.S. 385, 392-98 (1982) (Title VII); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (ADA). Put another way, only "the proper exhaustion of

administrative remedies gives the Title VII [or ADA] plaintiff a green light to bring an employment discrimination claim in court." *Granderson*, 211 F. App'x at 400. Thus, failure to timely exhaust administrative remedies is an appropriate threshold basis for dismissal of Title VII or ADA claims. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Upon initial review, the complaint appears to allege that the plaintiff filed a charge of discrimination with the EEOC within one hundred and eighty days after an alleged unlawful employment practice. However, the complaint does not state the specific grounds of that charge or whether the plaintiff received a right-to-sue notice. Moreover, no right-to-sue notice is attached to the complaint. Accordingly, the court cannot confirm that the plaintiff timely filed the required charge of discrimination, identify what specific discrimination plaintiff complained of in the charge, or determine whether the plaintiff filed this action within ninety days of receiving a right-to-sue notice. Thus, the court is unable to resolve whether the plaintiff has satisfied the administrative exhaustion requirement for Title VII and ADA claims. Taking into account the plaintiff's pro se status, however, the court will give the plaintiff an opportunity to resolve these concerns by providing a right-to-sue notice to the court.

### III. Conclusion

For these reasons, the plaintiff is **DIRECTED** to submit a copy of her right-to-sue notice. The plaintiff may also submit a written statement providing any additional information concerning the right-to-sue notice. The plaintiff must comply, or request an extension, within **30 DAYS** of the date this order is entered on the docket. The plaintiff is warned that failure to comply may result in the dismissal of her Title VII or ADA claims for failure to exhaust administrative remedies.

Upon receipt of the plaintiff's submission, the Court will proceed with initial review of the complaint.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge