# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CAROLYN MCKEOWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:20-cv-01042 |
| ) | Judge Trauger |
| STATE OF TENNESSEE ) | |
| DEPARTMENT OF HUMAN ) | |
| SERVICES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Carolyn McKeown filed a pro se employment discrimination complaint against the Tennessee Department of Human Services under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*; the Age Discrimination Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*; the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651, *et seq.*; and the Tennessee Occupational Safety and Health Act ("TOSHA"), Tenn. Code Ann. §§ 50-3-106(8) and 50-3-409(a). (Doc. No. 1.) She also filed an application to proceed as a pauper. (Doc. No. 2.) The court granted the plaintiff's application and directed her to provide a copy of the right-to-sue notice that she obtained from the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 4.) The plaintiff submitted an EEOC right-to-sue notice that indicates the plaintiff's ADA and Title VII claims are timely. (Doc. No. 5.)

Accordingly, the case is now before the court for initial review of the complaint. The court must conduct an initial review and dismiss any action filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against

a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

## I. Standard of Review

In reviewing the complaint, the court applies the same standard as under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, the court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The court must then consider whether those factual allegations "plausibly suggest an entitlement to relief," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[L]egal conclusions masquerading as factual allegations will not suffice," *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007), and the court need not accept as true "unwarranted factual inferences." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). However, it is not the role of the court "to ferret out the strongest cause of action on behalf of pro se litigants" or to "advis[e] litigants as to what legal theories they should pursue." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). Even under this lenient standard, pro se plaintiffs must still meet basic pleading requirements, *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and

2

follow the Federal Rules of Civil Procedure. *Jackson v. Dep't of Human Servs.*, No. 3:09-cv-38, 2010 WL 3491165, at *2 (M.D. Tenn. Aug. 31, 2010).

## II. Factual Background[1]

The complaint alleges that, on November 29, 2019, the Tennessee Department of Human Services ("DHS") hired the plaintiff, a woman over 40 years of age, as a disability claims examiner in the Department of Disability Services ("DDS").[2] (Doc. No. 1 at 1.) The plaintiff began a three-month training program on February 3, 2020. (*Id.*) Soon after, the plaintiff began to have disagreements with DHS personnel concerning salary, benefits, and scheduled hours. (*Id.* at 1-2.) The plaintiff communicated to supervisors that she was disabled and would not be able to purchase health insurance due to late-disclosed conditions of employment.[3] (*Id.*) DHS personnel, however, took no action. (*Id.*) In late February, despite the plaintiff's good job performance, supervisors began to reprimand the plaintiff and impose additional employment conditions, including the need to complete supplemental background suitability screening. (*Id.* at 3-4.) The plaintiff disclosed her disability to additional DHS personnel, but they took no action. (*Id.*)

On February 24, the plaintiff made a formal charge of harassment to her superiors. (*Id.* at 5.) The plaintiff received no resolution and had multiple frustrating or negative interactions with DHS personnel. (*Id.* at 5-7.) She also began to receive "excessive micromanagement" from her DDS trainer and supervisor. (*Id.*) On March 4, an investigator from the Tennessee equal

---

[1] The complaint prepared by the plaintiff is over twenty single-spaced pages long and contains a detailed narrative of events that occurred over several months, including reference to various documents. (*See* Doc. No. 1.) A complaint in federal court need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). While the plaintiff is not penalized for including so much additional information, the court does not restate all of plaintiff's factual narrative here.

[2] DDS is an agency of DHS that processes disability claims for the Social Security Administration. (Doc. No. 1 at 1.)

[3] The complaint does not describe the plaintiff's disability in detail.

3

employment opportunity department, Alysse Gregory, called the plaintiff to investigate the harassment charge. (Id. at 7.) On March 8, the plaintiff emailed her supervisors, again disclosed her disability, and asked to amend the charge of harassment to request a meeting "with the EEO committee so she could discuss her charge in person."(*Id*.) Over the next few weeks, the plaintiff continued to complain – including to her congressman, state representatives, and the governor's office – about the handling of her employment and complaint. (*Id*. at 8.) On March 9, the plaintiff pressed her complaint with a new investigator at the EEOC office. (*Id*.) The plaintiff disclosed her disability and explained that she was being treated "disparately after she disclosed her disability" to her supervisors. (*Id*.)

The complaint alleges that the plaintiff's supervisors subsequently "began to wage a campaign of retaliation" against the plaintiff, including multiple reprimands, that was designed to micromanage, control, distract and "overload" the plaintiff. (*Id*. at 8-10.) The plaintiff believes these actions were an attempt to get her "to quit her job." (*Id*. at 10.) On March 11, the plaintiff sent an email "asking for the harassment and disparate treatment to stop," and asserting that she was being treated "disparately and in retaliation for exercising a protected, concerted activity." (*Id*.) The plaintiff further asserted that she was being "excessive[ly] scrutinize[ed] after disclosing . . . health impairments." (*Id*.) On March 11, the plaintiff's supervisors publicly demanded that she bring in a doctor's note in order to use the bathroom during "non-break" times, but the supervisors did not impose this requirement on other employees. (*Id*. at 11.) The plaintiff disclosed her disability again, but the supervisors "appeared unfamiliar" with federal civil rights laws. (*Id*.) The plaintiff requested mediation, but the request was denied. (*Id*. at 11-12.)

On March 12, Gregory notified the plaintiff that the investigation of the plaintiff's complaint had been closed, and she referred the plaintiff to the Tennessee Bar Association. (*Id*. at

12.) On the same day, the plaintiff was notified that her additional background suitability screening submission was incomplete. (*Id.* at 12-13.) The plaintiff sought assistance concerning the additional screening submission from multiple individuals, but little was provided. (*Id.* at 13.) The complaint alleges that the plaintiff's supervisors continued to "wage . . . retaliation" involving "excessive scrutinization" because she was "targeted for pushout." (*Id.* at 14-15.)

In mid-March, the plaintiff began to express concerns about the DDS office being open with insufficient social distancing during the COVID-19 pandemic, including making complaints about the cleanliness of the bathrooms. (*Id.* at 15-16.) The plaintiff noted that this was very concerning given her disability. (*Id.*) The plaintiff submitted a "Request for Accommodation Due to Higher Risk for Serious Illness from Covid-19," but no action was taken. (*Id.* at 16-17.) On March 22, the plaintiff emailed the general counsel, asked if the general counsel personally spoke with the governor, and requested to speak on the phone about her concerns. (*Id.* at 17.)

On March 23, the plaintiff was terminated by her supervisors on the ground that she did not complete the questions on her background suitability screening form. (*Id.* at 18.) The complaint alleges the plaintiff's termination was "payback" for "filing a legitimate complaint." (*Id.*)

**III. Discussion**

The complaint reflects that plaintiff brings four federal causes of action – retaliatory termination under Title VII, the ADEA, the ADA, and OSHA – and one state cause of action – retaliatory termination under TOSHA. (*Id.* at 19.)

### A. OSHA and TOSHA Claims

The complaint does not state colorable retaliation claims under OSHA or TOSHA. Regarding the OSHA claim, the complaint does not allege that the plaintiff ever undertook any protected activity under OSHA. *See* 29 U.S.C. § 660(c)(1) (prohibiting retaliation against

5

employees for filing a complaint under OSHA, or instituted or causing to be instituted any proceeding under OSHA, or testifying in any such proceeding). Regardless, there is no private cause of action available to a civil plaintiff for an alleged violation of OSHA. *Hunt v. Wood Pers. Servs., LLC*, No. 3:20-CV-00053, 2020 WL 1170277, at *3 (M.D. Tenn. Mar. 11, 2020) (citing *Ellis v. Chase Commc'ns, Inc.*, 63 F.3d 473, 477 (6th Cir. 1995); *Madigan v. Nabisco Brands, Inc.*, 46 F. App'x 329, 331 (6th Cir. 2006); *see also Akers v. Wal-Mart Stores, Inc.*, No. 4:10-CV-41, 2011 WL 826246, at *3-4 (E.D. Tenn. Mar. 3, 2011) ("[OSHA] does not afford [the p]laintiff the right to file an independent cause of action . . . for retaliatory discharge . . . based on action taken pursuant to [its] provisions[.]"). Rather, "[t]he exclusive remedy available under OSHA is for the Secretary to commence an investigation and a potential lawsuit against the employer." *Akers*, 2011 WL 826246, at *4. Accordingly, the plaintiff's individual claim for retaliation under OSHA must be dismissed for failure to state a claim.

Similarly, "TOSHA does not authorize [a] plaintiff to bring a private cause of action based upon alleged violations of the statute." *McCarthy v. G.UB.MK Constructors*, No. 3:14-CV-472-TAV-HBG, 2017 WL 1031980, at *7 (E.D. Tenn. Mar. 15, 2017); *Coley v. Pennakem, LLC*, No. 09-2780-STA, 2010 WL 2197821, at *2-3 (W.D. Tenn. May 28, 2010); *Boyd v. Edwards & Assocs.*, 309 S.W.3d 470, 473 & n.1 (Tenn. Ct. App. 2009). Rather, an employee must file a complaint under TOSHA with the Tennessee commissioner of labor and workforce development. *See* Tenn. Code Ann. § 50-3-409. Thus, the plaintiff's claim for retaliatory discharge under TOSHA must also be dismissed for failure to state a claim.

### B. Title VII, ADEA, and ADA Retaliation Claims

The complaint specifies that the plaintiff intends to bring retaliation claims under Title VII, the ADEA, and the ADA. (Doc. No. 1 at 19.) These three civil rights laws guard against

discrimination in the workplace. Title VII makes it unlawful for an employer to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Finally, the ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, employee compensation, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Each of these laws also prohibits retaliation against employees for engaging in protected conduct. Title VII makes it unlawful to retaliate against employees for opposing any practice made unlawful by Title VII, or making a charge or testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. 28 U.S.C. § 2000e-3(a). Similarly, the ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination. 29 U.S.C. § 623(d). Finally, the ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).

To state a colorable retaliation claim, the plaintiff must plausibly allege that: (1) she engaged in protected conduct under Title VII, the ADEA, or the ADA; (2) the defendant had knowledge of the protected activity; (3) the defendant thereafter took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (Title VII);

7

Case 3:20-cv-01042    Document 6    Filed 01/19/21    Page 7 of 9 PageID #: 63

*Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008)) (ADEA); *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)) (ADA).

Here, the gravamen of the complaint is that the plaintiff repeatedly requested accommodations for her disability and complained about perceived discrimination based on disability in the terms and conditions of her employment, and, in response, the defendant engaged in a retaliatory campaign that culminated in the plaintiff's termination. More specifically, the complaint alleges that the plaintiff made numerous requests and complaints to supervisors and at least one formal complaint that was investigated by Tennessee's equal employment opportunity office. Accordingly, the complaint plausibly alleges that the engaged in protected conduct under the ADA. 42 U.S.C. § 12203(a). The complaint also alleges that multiple supervisors knew of the plaintiff's disability and protected activities and terminated the plaintiff in response under a pretextual rationale. Thus, the complaint plausibly satisfies the remaining elements of an ADA retaliation claim. *Rorrer*, 743 F.3d at 1046. The plaintiff, therefore, has stated a colorable claim for retaliation under the ADA that may proceed for factual development.

The complaint does not, however, allege colorable retaliation claims under Title VII or the ADEA. Concerning Title VII, there is no allegation in the complaint that the plaintiff ever complained to anyone about discrimination by the defendant based upon race, color, religion, sex, or national origin – indeed, the complaint does not discuss these characteristics. (*See* Doc. No. 1.) Thus, the plaintiff has not plausibly alleged that she engaged in a protected activity under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1). Regarding the ADEA, the plaintiff alleges that she is over 40 and that one of her complaints mentioned her age as well as her disability. (*See* Doc. No. 1 at 10.)

Assuming, arguendo, that this suffices for protected conduct under the ADEA, the plaintiff nevertheless fails to allege, as required, any causal connection between expressing this concern about her age and her eventual termination. Rather, the plaintiff consistently alleges that she was terminated in retaliation for expressing concerns related to her disability. Accordingly, the complaint does not plausibly allege retaliation under the ADEA. The plaintiff's Title VII and ADEA retaliation claims must, therefore, be dismissed for failure to state a claim.

## IV. Conclusion

For these reasons, the court concludes that the plaintiff has stated a colorable ADA retaliation claim. All other claims will be dismissed.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge